La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
En este caso, el Tribunal de Apelaciones confirmó la de-cisión del Tribunal de Primera Instancia que había dene-gado, sin una vista previa, urna moción de supresión de la identificación de un acusado llevada a cabo mediante una rueda de identificación de voz. Al solicitar que revoquemos ese dictamen, el peticionario alega que la rueda de identi-ficación de voz fue efectuada de manera ultra vires. La solución de esta controversia nos brinda la oportunidad de expresarnos sobre los requisitos que el debido proceso de ley impone a una identificación de voz mediante una rueda de detenidos.
I
Según los expedientes que obran en los autos, el 15 de marzo de 2003 ocurrieron unos hechos delictivos en una casa de empeño propiedad del Sr. Angel L. Ortiz Rodrí-guez, padre de la Sra. Jessica Ortiz Agosto y en la residen-cia propiedad de esta última y su esposo, el Sr. Raymond Santiago Pérez. Estos lugares están ubicados en sitios distintos. La señora Ortiz alegó que, por instrucciones de sus atacantes, habló por teléfono con un hombre que, bajo amenaza de muerte, le exigió información sobre la alarma, la bóveda y los candados de la casa de empeño de su padre. La señora Ortiz no conocía a la persona con quien sostuvo la llamada telefónica.
El peticionario fue arrestado junto a otra persona en el negocio del padre de la señora Ortiz y, ante las alegaciones de ésta sobre la llamada telefónica, los agentes del orden público decidieron realizar una rueda de identificación de voz por la vía telefónica. Durante ésta, el acusado estuvo acompañado por su abogado. En la rueda, el peticionario, al igual que los otros cuatro integrantes, dijeron las mis-mas frases utilizando un teléfono. La señora Ortiz, *281 quien escuchó las frases por teléfono, identificó al peticio-nario como la persona con la que alegadamente había ha-blado la noche de los hechos. Del expediente no surge que la señora Ortiz hubiera visto a los integrantes de la rueda de identificación. Tampoco encontramos una descripción de la voz de la persona con quien la señora Ortiz alegada-mente habló por teléfono.
El acta de la rueda fue suscrita por el agente Santiago y por la defensa del peticionario.(1) Tras la identificación efectuada por la señora Ortiz, se procedió a denunciar y, posteriormente, a acusar al peticionario, tanto por los he-chos ocurridos en la residencia de la señora Ortiz como por los hechos ocurridos en el negocio de su padre.
Oportunamente, la defensa solicitó la supresión de la identificación del peticionario. En su moción de supresión de evidencia de identificación, el peticionario adujo que las Reglas 252.1 y 252.2 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, que establecen el modo para celebrar una rueda de detenidos y la utilización de fotografías como me-dios de identificación, no proveen las salvaguardas parti-culares que requiere la identificación por voces, por lo tanto, no aplican al procedimiento. No obstante reconocer que la jurisprudencia ha establecido que el Estado puede obligar a un acusado a someterse a identificaciones olfati-vas, auditivas o táctiles, el peticionario argumentó que el procedimiento al cual fue sometido no cumplió con las Re-glas de Evidencia ni con la jurisprudencia que regulan la celebración de un experimento científico y establecen los requisitos para la admisión de su resultado. El peticiona-rio, además, alegó que el procedimiento de identificación por voces que se llevó a cabo contravino las garantías de la Cuarta Enmienda de la Constitución de Estados Unidos y la Sec. 10 del Art. II de nuestra Carta de Derechos, L.P.R.A., Tomo 1.
*282 Durante la vista evidenciaría para dilucidar la moción de supresión de evidencia, la defensa reiteró los plantea-mientos esbozados en su moción. El Ministerio Público ar-gumentó que la rueda de identificación se ciñó a lo dis-puesto por las Reglas de Procedimiento Criminal. Además, el Ministerio Público señaló que el Estado le hizo al peti-cionario las advertencias que requiere la ley, incluyendo su derecho a estar representado por abogado. A pesar de ello, la defensa del peticionario no objetó el procedimiento, mientras éste se llevaba a cabo, y suscribió el acta prepa-rada por los agentes, del orden público y unas tarjetas que recogen las frases que repitieron los integrantes de la rueda.
Según surge de la minuta de la vista, el Ministerio Pú-blico argumentó que, cuando la defensa intenta suprimir evidencia de identificación, el peso de la prueba recae sobre ésta, pues sólo se invierte la carga probatoria cuando la evidencia que se pretende eliminar fue producto de un re-gistro o allanamiento sin orden judicial. En este caso no hubo una orden judicial, pero la evidencia objeto de la vista no fue producto de un registro o allanamiento, pues se ha establecido que la voz de las personas, al igual que sus características físicas, están a la vista de todos y no cons-tituyen evidencia sujeta a incautación, sino rasgos físicos que no están protegidos por el derecho a la intimidad de las personas. Además, el Ministerio Público alegó que la de-fensa tenía que incluir en su moción los hechos específicos que daban base a su solicitud de supresión, lo cual no hizo en este caso, pues se limitó a hablar de un experimento sin describir en detalle en qué consiste éste ni según qué cir-cunstancias se llevó a cabo. Sobre esta base, el Ministerio Público adujo que la defensa no puso al tribunal en condi-ciones de determinar la controversia y solicitó que se dene-gara de plano la moción de supresión de evidencia de identificación.
*283 Según la minuta, la defensa del peticionario argumentó que las únicas reglas que rigen una rueda de confrontación son las Reglas 252.1 y 252.2 de Procedimiento Criminal, supra, con las cuales el Ministerio Público había incumplido. Sostuvo que nunca vio a los participantes de la rueda. Argumentó que la participación de su abogado se circunscribió a observar a una persona que escuchaba unas voces a través de un teléfono. La defensa planteó que nunca se estableció cuál iba a ser el procedimiento para perpetuar el ejercicio que se llevó a cabo y que nunca se perpetuó la manera como se hizo la identificación. No hay constancia de quiénes fueron los integrantes de la rueda de detenidos, como exige la Regla 252 (34 L.P.R.A. Ap. II), de modo que no se podrá reproducir ante el tribunal lo que ocurrió en la rueda para efectos de determinar si ésta fue innecesariamente sugestiva o poco confiable. La defensa del peticionario argüyó, además, que: (1) la llamada original que recibió la señora Ortiz fue a través de un celular y no de un teléfono regular; (2) no se tenía una descripción previa de la voz del sospechoso, y (3) no se sometió a una rueda de identificación de voz al otro sospechoso que fue arrestado con el peticionario.
Surge de la minuta que el Ministerio Público le mostró al tribunal el acta de la identificación. El tribunal expresó que: la moción del peticionario no narra los hechos que dan base a la solicitud de supresión; la defensa estuvo presente en el procedimiento, y no hay observaciones del abogado en el acta ni en las tarjetas que recogen lo que dicen los inte-grantes de la rueda. Concluyó que estos documentos no revelan que se le hubiese sugerido a la testigo a quién de-bía identificar y que, conforme a lo resuelto en Pueblo v. Rodríguez Maysonet, 119 D.P.R. 302 (1987), el procedi-miento fue efectuado según lo establecido en las Reglas de Procedimiento Criminal.
En su resolución, el Foro de Primera Instancia resolvió que la identificación fue voluntaria, libre y sin interferen- *284 cia de persona alguna y que, al estar presente la represen-tación legal del peticionario y al no haberse hecho constar objeción alguna al proceso que se llevó a cabo, la rueda de detenidos fue celebrada conforme a Derecho y según lo es-tablecido en las Reglas de Procedimiento Criminal. Por es-tas razones, el Tribunal de Primera Instancia denegó la moción de supresión de evidencia del peticionario sin lle-var a cabo la vista evidenciaría pautada, convirtiéndola en una vista argumentativa.
El peticionario solicitó al Tribunal de Apelaciones que revocara esta resolución. El foro apelativo, por su parte, concluyó que ni los hechos ni los fundamentos expuestos en la moción de supresión del peticionario fueron lo suficien-temente específicos como para merecer la celebración de una vista evidenciaría. Señaló que el Tribunal de Primera Instancia incluso permitió que las partes argumentaran sus puntos de derecho antes de emitir su resolución. Sobre la identificación del peticionario, el foro apelativo deter-minó que ésta cumplió con todos los parámetros constitu-cionales que establece el derecho a un debido proceso de ley, pues el peticionario contó con la presencia de su abo-gado, la rueda estuvo integrada por cinco personas y la defensa no objetó ni hizo constar observación u objeción alguna durante el proceso “como señala la regla que debe hacer para dar la oportunidad a corregir cualquier defecto”. Apéndice de la Petición de certiorari, pág. 9. Ade-más, el abogado firmó el acta. Por no haberse presentado alegación alguna en la moción de supresión de evidencia ni en el recurso de apelación sobre sugestividad durante la rueda de identificación, el tribunal apelativo decidió confir-mar al Foro de Primera Instancia.
El 15 de abril de 2005 denegamos la solicitud de certio-rari presentada por el peticionario, determinación que re-consideramos el 27 de mayo de 2005. Con la comparecencia de ambas partes nos encontramos prestos a emitir nuestro dictamen.
*285 II
En su comparecencia, el peticionario argumenta que las circunstancias fácticas de este caso hacían imperativo el análisis crítico del tribunal sobre la validez y confiabilidad de la identificación durante la vista de supresión de iden-tificación antes de admitirla en evidencia, según lo re-suelto en Pueblo v. Mattei Torres, 121 D.P.R. 600 (1988).
El peticionario fundamenta su reclamo con diversas ra-zones, entre éstas, alega que: (1) la identificación fue a través de un procedimiento extrajudicial; (2) las versiones de los peijudicados, la señora Ortiz y su esposo, son con-tradictorias, pues ella alega haber hablado por teléfono con el peticionario, mientras que su esposo alega que los asal-tantes hablaron con una persona por teléfono; (3) la con-versación alegada fue con un individuo que no se encon-traba presente, ya que fue por teléfono; (4) la conversación duró apenas unos segundos y la perjudicada no conocía a la persona con quien alegadamente habló ni había escuchado previamente su voz, así como tampoco tenía información sobre su identidad; (5) la conversación se dio en medio de una atmósfera de miedo y tensión, ya que la vida del hijo de la peijudicada estaba en peligro, y (6) el procedimiento de identificación de voz fue llevado a cabo por un agente de la Policía sin experiencia ni preparación en el área. Ade-más, la identificación de voz es la única evidencia existente sobre la identidad del peticionario y el procedimiento no fue grabado.
El peticionario alega que no se han establecido en nues-tro ordenamiento jurídico, ni en nuestra jurisprudencia, los parámetros en los cuales pueda ser admisible la prueba de identificación obtenida en un procedimiento como el de autos. Aduce que esta laguna normativa ocasiona irregula-ridad en los procesos de identificación de esta índole. Argu-menta que si se determina que se trata de un mecanismo válido, habría que revisar las disposiciones legales que le *286 serían aplicables, pues el Estado no puede crear una regla análoga y obviar el procedimiento ya establecido. Nos soli-cita que evaluemos la casuística de algunas jurisdicciones en las que se ha utilizado el mecanismo de identificación por voces y pide que establezcamos unas guías para que la identificación de voz sea confiable.
El peticionario entiende que este tipo de identificación debe limitarse a aquellos casos en los que estén presentes otros elementos de prueba para establecer la identidad del sospechoso. Arguye que, en casos como éste, donde no hay otra prueba para establecer la identidad del sospechoso ni elemento distintivo o de corroboración adicional que no sea el recuerdo de un testigo, se debe descartar de plano esa identificación, pues su alta probabilidad de error incide en el derecho del acusado a un debido proceso de ley y a un juicio justo e imparcial, todo esto agravado por el hecho de que en este caso no se preservó la rueda.
Argumenta el peticionario que, en el supuesto de que se utilice la citada Regla 252.1 por analogía, debe cumplirse cabalmente con sus requisitos. El peticionario alega que el procedimiento seguido en este caso no cumple con los re-quisitos de la rueda de confrontación regulada por las Re-glas de Procedimiento Criminal. En particular, no se cum-plió con el requisito que establece la Regla 252, supra, en cuanto a que, además del acta, debe tomarse, cuantas ve-ces fuera necesario, una fotografía de la rueda tal y como le fue presentada a los testigos.
Según el peticionario, en casos como el de autos, por tratarse de voces y no de rostros, era indispensable que se perpetuaran las voces mediante el mecanismo de una grabación. Al no hacerse así, no existe un registro fiel y confiable del procedimiento que el juzgador de hechos pueda aquilatar. Además, durante el proceso efectuado, el abogado no tuvo la oportunidad de escuchar por sí mismo a las personas con las que habló la perjudicada.
*287 También plantea el peticionario que el acta de los pro-cedimientos no deja de ser prueba de referencia y, salvo estipulación en contrario, el promovente de esa prueba tiene que poner al juzgador de hechos en condiciones de aquilatar la totalidad de las circunstancias que rodearon la investigación, incluyendo examinar por sí mismo el pare-cido de la voz del sospechoso con el resto de los participan-tes de la rueda. Alega que el acta no subsana ni sustituye el requisito de perpetuar el procedimiento y que tampoco puede darse a la presencia del abogado de defensa durante el procedimiento el efecto de validar un procedimiento con-trario a derecho. Es sólo en la vista de supresión de iden-tificación que existe la oportunidad de inquirir sobre los aspectos requeridos para determinar la confiabilidad de una identificación y cuestionar la validez, legitimidad, con-fiabilidad o admisibilidad del resultado del proceso.
El peticionario arguye que, aun cuando su abogado es-tuvo presente durante la rueda de identificación y se pre-paró un acta de los procedimientos, no se grabaron las vo-ces de los participantes ni la defensa tuvo la oportunidad de saber ni conocer las características de los componentes de la rueda en términos de edad, nacionalidad, etc. Por eso niega que el acta sea suficiente para validar la identifica-ción cuando no hay otra prueba para establecer la confia-bilidad del procedimiento. Expone que ese asunto no versa sobre el valor probatorio de la identificación, sino que va más allá, a la admisibilidad de la evidencia de identifi-cación.
Al no estar contemplada la rueda de identificación de voces por las Reglas de Procedimiento Criminal, el peticio-nario reclama que el tribunal debió haber exigido al Estado que mostrara la confiabilidad de la identificación efectuada. La vista evidenciaría hubiese servido para de-terminar si era necesario grabar el procedimiento para otorgar confiabilidad al proceso.
*288 El peticionario explica que, en su moción de supresión de evidencia, cuestionó la confiabilidad del proceso de autos y planteó que, no grabar las voces, constituyó una irre-gularidad insalvable que hace inadmisible la identifica-ción, al impedir al juzgador de hechos verificar por sí mismo el parecido de las voces utilizadas en la rueda de confrontación y otros elementos de la identificación. Ade-más, el peticionario alega que demostró la existencia de hechos suficientes para justificar la celebración de una vista durante su argumentación, antes de que el tribunal denegara su solicitud de vista evidenciaría. También alega que la segunda persona arrestada con el peticionario nunca fue sometida a semejante procedimiento.
En su alegato, el Procurador General explica que el pro-cedimiento de identificación por voz se rige por la Regla 252.1, supra, pues su inciso (6) establece unos criterios que aplican a situaciones como ésta, en la que se le solicita al sospechoso decir alguna frase. Por esto, arguye que la Re-gla 252.1, supra, no se aplica por analogía, sino que su letra prevé una situación como la de autos. Aduce, tam-bién, que el procedimiento que se llevó a cabo cumple con todos los requisitos de esta regla.
Además, señala el Procurador que esta regla provee en su inciso (4) para que la defensa del sospechoso indique al encargado de la rueda sobre cualquier infracción a la regla. En este caso, se cumplió con el requisito del acta y el abo-gado de la defensa no sólo no objetó, sino que suscribió el acta. Contrario a lo que alega el peticionario, el procurador explica que el representante legal vio a los integrantes de la rueda, estuvo de acuerdo con su selección e, incluso, se-leccionó el teléfono que se iba a usar.(2) Fundamentado en opiniones de este Tribunal que versan sobre errores en la *289 admisión que no se objetaron en primera instancia, el Mi-nisterio Público alega que, al no objetar oportunamente, el peticionario no puede recurrir de los errores alegados.
Según el Ministerio Público el foro apelativo, al igual que el Foro de Primera Instancia, concluyó que la moción de supresión de evidencia no cumplía con los requisitos de especificidad exigidos, pues de su faz no se desprende una controversia sustancial de hechos que obligara al tribunal a celebrar una vista evidenciaría.
Por último, el Procurador General arguye que según Pueblo v. Suárez Sánchez, 103 D.P.R. 10 (1974), Pueblo v. Peterson Pietersz, 107 D.P.R. 172 (1978), y Pueblo v. De Jesús Rivera, 113 D.P.R. 817 (1983), la determinación so-bre la admisibilidad de una identificación tiene todo el res-peto y validez que en apelación se extiende a las determi-naciones de hechos. El Tribunal de Primera Instancia concluyó que no surge del acta que el procedimiento haya sido sugestivo, por lo que al no haber error de derecho, prejuicio o parcialidad que amerite la revocación, procede confirmar.
III
Como dijimos en Pueblo v. Rodríguez Maysonet, supra, pág. 309:
No puede haber duda en la mente de persona alguna del hecho de que nunca puede haber una convicción sin prueba que “conecte” o “señale” a un imputado de delito, más allá de duda razonable, como el responsable de los hechos delictivos que se le imputan. Es por ello que la “identificación” del acu-sado es una de las etapas más esenciales o críticas en el pro-cedimiento criminal... por cuanto la admisión en evidencia de prueba viciada sobre identificación puede constituir una viola-ción del debido procedimiento de ley. (Citas omitidas.)
La evaluación de los perjuicios de una identificación re-quiere un análisis abarcador que tome en consideración la *290 totalidad de las circunstancias que rodean el proceso de identificación y los hechos particulares del caso. Simmons v. United States, 390 U.S. 377, 383 (1968). El caso Simmons resolvió que se viola el debido proceso de ley de la persona identificada y el resultado de la identificación no será admisible como evidencia en los tribunales si, según la totalidad de las circunstancias, el procedimiento utili-zado
... was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification ....
... even though the identification procedure employed may have in some respects fallen short of the ideal. Id. págs. 384-386.
En Neil v. Biggers, 409 U.S. 188 (1972), el Tribunal aclaró que el criterio de probabilidad sustancial de identi-ficación errónea irreparable (substantial likelihood of irreparable misidentification) de Simmons v. United States, supra, se configuró para sopesar el efecto de una identifi-cación viciada hecha antes del juicio sobre la admisibilidad de una identificación hecha en el tribunal (in-court identifications). El Tribunal estableció una distinción entre esa situación y la que se presenta al evaluar la admisibili-dad de la identificación fuera del tribunal. Concluyó que el adjetivo “irreparable” no aplica a la evaluación de identifi-caciones extrajudiciales, pues lo esencial en cuanto a éstas es determinar si el proceso de identificación es tan suges-tivo que acarrea la “probabilidad sustancial de una identi-ficación errónea”. íd., págs. 381-382. Véase, también, E. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1991, Vol. 1, pág. 263.(3)
*291 Según el Tribunal Supremo de Estados Unidos, al con-siderar si un procedimiento es tan sugestivo que acarrea la probabilidad sustancial de identificación errónea, lo que se pretende es desalentar el uso, por los funcionarios del or-den público, de métodos menos confiables cuando existen otros más confiables. Por eso, aún si se determina que un procedimiento de identificación fue innecesariamente su-gestivo, no se excluirá su fruto evidenciario ipso facto, sino que se debe pasar a considerar si, según la totalidad de las circunstancias, la identificación es confiable. Neil v. Biggers, supra, pág. 199; Mason v. Brathwaite, 432 U.S. 98, 106-107 (1977). Ese es, precisamente, el factor central para establecer la admisibilidad de la prueba de identificación.
La jurisprudencia federal ha rechazado la regla de ex-clusión de prueba denominada “per se rule”, mediante la cual se excluía toda prueba obtenida en un proceso de iden-tificación extrajudicial innecesariamente sugestivo. En vez, ha adoptado una regla más permisiva y de carácter ad hoc, que permite que prueba pertinente llegue ante la con-sideración del juzgador de hechos si cumple con ciertos re-quisitos de confiabilidad, aún cuando el procedimiento fuere sugestivo o innecesariamente sugestivo. Mason v. Brathwaite, supra, págs. 110 y 113.
El examen judicial de admisibilidad tiene dos partes, ambas sujetas a una perspectiva circunstancial. La pri-mera evalúa la intervención del Estado al organizar un procedimiento de identificación, ello con el propósito de desalentar procedimientos sugestivos. La segunda va al as-pecto subjetivo y humano al evaluar, a base de hechos que denoten confiabilidad, la identificación hecha por el testigo para determinar si hubo probabilidad sustancial de identi-ficación errónea.
Los factores que, según la jurisprudencia, se deben evaluar para establecer la confiabilidad en la identifi- *292 cación y, por ende, la admisibilidad de esa identificación son: (1) la oportunidad que tuvo el testigo de ver al criminal durante la comisión del delito; (2) el grado de atención del testigo; (3) la precisión de la descripción del perpetra-dor que haga el testigo; (4) el grado de certeza que demues-tre el testigo durante la rueda de detenidos, y (5) el lapso de tiempo que ha transcurrido entre el crimen y la identificación. Neil v. Biggers, supra, pág. 199. “El posible efecto corruptor de un procedimiento innecesariamente su-gestivo deberá sopesarse contra estos factores.” (Traduc-ción nuestra.) Mason v. Brathwaite, supra, pág. 114.
En Pueblo v. Gómez Incera, 97 D.P.R. 249, 252 (1969), reconocimos que “[l]os mayores extravíos en la administra-ción de justicia lo ocasionan los errores en la identificación de los acusados”, pues “ ‘evidencia de identificación es la evidencia de opinión por excelencia’ ”. Adoptamos, enton-ces, la doctrina que establecía la supresión de toda prueba de identificación, fruto de un procedimiento tan viciado que, como cuestión de derecho, haga constitucionalmente inadmisible la identificación por violar el debido proceso de ley. Íd., pág. 251. Según nuestro dictamen, la determina-ción de si se ha violado este derecho “depende de la totali-dad de las circunstancias que rodearon el procedimiento de identificación”. Íd., pág. 257.
Ya en Pagán Hernández v. Alcaide, 102 D.P.R. 101, 111 (1974), y en Pueblo v. Rosso Vázquez, 105 D.P.R. 905 (1977), nuestra jurisprudencia muestra una inclinación hacia el enfoque que se perfilaba en la jurisprudencia federal, en cuanto a que “lo importante no es el método que se utilice para la identificación del acusado, lo importante es que esa identificación sea libre, espontánea y confiable”. Pueblo v. Rosso Vázquez, supra pág. 908. En Pueblo v. Peterson Pietersz, págs. 183-185, afianzamos nuestra adopción del desarrollo jurisprudencial estadounidense sobre el análisis aplicable a las identificaciones de acusados. Por las mismas razones expuestas en Mason v. Brathwaite, su *293 pra, descartamos “la sugestión o insinuación como ele-mento que por sí sólo ofende el debido proceso de ley u obliga a la exclusión de prueba de identificación”, estable-cimos que “[l]a norma vigente hace depender la confiabili-dad de la identificación en la ‘totalidad de las circunstan-cias’, a[u]n cuando el procedimiento de confrontación haya sido sugestivo”, y señalamos que los “factores principales que deben guiar la posibilidad de un error de identifica-ción” son los señalados en Neil v. Biggers, supra. Pueblo v. Peterson Pietersz, supra, pág. 183. Véase, además, Pueblo v. Ortiz Pérez, 123 D.P.R. 216, 224 (1989).
En el caso de Pueblo v. Rodríguez Maysonet, supra, nos referimos a los principios ya citados y al estándar aplicable, tanto en nuestra jurisdicción como en Estados Unidos, para evaluar planteamientos sobre el vicio en la identificación de acusados. En esa ocasión aclaramos que la rueda de detenidos
... “es un instrumento en reserva cuando la confusión, el correr del tiempo, la difícil percepción, el recuerdo tenue, la inseguridad del testigo, o cualquier otro factor en evaluación lógica enerve la razonable certeza exigida de quien señala al autor del delito”. íd., pág. 314, citando a Pueblo v. Suárez Sán-chez, supra, pág. 19.
Al resolver ese caso, ya contábamos con la Regla 252 de Procedimiento Criminal, supra, y con respecto a ella decla-ramos que sus principios tenían
... el propósito de regular el procedimiento de identificación cuando éste está en manos, o es dirigido o controlado, por los funcionarios del Estado .... Ello por razón de que se “teme” que los funcionarios del Estado a cargo del procedimiento de iden-tificación en un caso en particular “interfieran” indebidamente con los testigos de los hechos “sugiriéndoles” a éstos la persona que deben identificar. Pueblo v. Rodríguez Maysonet, supra, págs. 310-311. Véase, además, Exposición de Motivos, Ley Núm. 199 de 23 de julio de 1974 (1974 (Parte 2) Leyes de Puerto Rico 90).
*294 En su inciso (a), la Regla 252.1, supra, establece lo si-guiente sobre su aplicación:
Las reglas que se establecen a continuación deberán se-guirse siempre que algún funcionario del orden público so-meta a un sospechoso a una rueda de detenidos (lineup) con el propósito de identificar al posible autor de un acto delictivo.
A pesar de la aparente rigidez de esta disposición, en Pueblo v. Ortiz Pérez, supra, pág. 223, advertimos que “[d]e por sí, no toda anormalidad cometida en el proceso de identificación de un acusado mediante rueda de detenidos acarrea la supresión de la evidencia de identificación”. Por lo que, aun cuando contamos con un cuerpo de reglas que reglamentan los procedimientos, no todo incumplimiento con sus disposiciones vicia la identificación. Como hemos reiterado, una conclusión a los efectos de encontrar vicio requiere un análisis contextualizado de la totalidad de las circunstancias.
El 12 de junio de 1967, el Tribunal Supremo de Estados Unidos resolvió tres casos que se apartan de la regla general que hasta entonces prevalecía y que dictaba que el modo utilizado para identificar a un sospechoso de delito era un asunto que iba al peso de la prueba de identificación y no a su admisibilidad. Estos casos son: United States v. Wade, 388 U.S. 218 (1967); Gilbert v. California, 388 U.S. 263 (1967); Stovall v. Denno, 388 U.S. 293 (1967).
Desde entonces, la evaluación sobre el método utilizado para identificar a un acusado es un asunto que atañe a la admisibilidad de la prueba de identificación. Simmons v. United States, supra. Ahora bien, una vez admitida debi-damente, la confiabilidad de la prueba de identificación, al igual que la credibilidad que merezca el resto de la prueba del Estado, es un asunto que deberá dirimir el juzgador de los hechos. Foster v. California, 394 U.S. 440, 443 esc. 2 (1969).(4)
*295 Cónsono con este enfoque, en Neil. v. Biggers, supra, pág. 193 esc. 3, el Tribunal expresó que si bien la resolu-ción de un planteamiento de debido proceso de ley por una identificación alegadamente sugestiva requiere la conside-ración de cuestiones de hecho, la controversia no versa so-bre los hechos propiamente dichos, sino sobre las implica-ciones constitucionales de esos hechos. Por esto, al evaluar el aspecto de confiabilidad, el Tribunal rechazó aplicar la deferencia usual que se le confiere a las determinaciones de hechos de los Tribunales de Primera Instancia. (5)
En el caso de Pueblo v. Rey Marrero, 109 D.P.R. 739, 751—752 (1980), explicamos que una vez comenzado el juicio, si el acusado tiene que aportar prueba para demostrar algún vicio en el proceso de identificación, es necesario hacer una pausa en el juicio y retirar al jurado. Así lo hizo el Tribunal de Primera Instancia en Pueblo v. Torres Rivera, 137 D.P.R. 630 (1994), al celebrar una vista evidenciaría en ausencia del jurado para dilucidar una moción de supresión de evidencia. El tribunal admitió la evidencia y recayó la sentencia condenatoria. El acusado nos solicitó que revocáramos la determinación del jurado por, entre otras cosas, haber considerado la prueba de identificación, a lo que contestamos que: “Habiendo determinado el tribunal que la rueda de detenidos no estuvo viciada, le correspondía al jurado adjudicar la credibilidad que estos testigos le merecieran.” (Escolio omitido.) Íd., pág. 638.
En Pueblo v. Peterson Pietersz, supra, el tribunal celebró una vista evidenciaría de supresión de identificación, luego de comenzado el juicio. El tribunal suprimió el testimonio de uno de los testigos, mas no así el testimonio de otros testigos identificantes. Al resolver la moción de su- *296 presión de evidencia, el tribunal encontró que la identifica-ción no estuvo viciada y luego instruyó al Jurado sobre la supresión de uno de los testimonios. Tras recaer la senten-cia condenatoria, el acusado la apeló, usando como funda-mento el que hubo vicio en la identificación. Al resolver, dijimos:
... [l]a presencia de sugestión no excluye irremisiblemente la prueba, sino que impone al jurado o al juez constituido en tribunal de derecho la labor de separar campos en el testimo-nio para determinar su confiabilidad y la existencia de prueba de identificación no influida ni maculada por conducta sugestiva. íd., págs. 183-184.
Estas palabras las tomamos de la doctrina estadouni-dense, según expuesta en el caso Mason v. Brathwaite, supra, pág. 116. Como explicamos, el Tribunal Supremo federal rechazó el llamado “per se rule” para permitir que prueba pertinente llegara ante la consideración del juzga-dor de los hechos si cumple con ciertos requisitos de confiabilidad. El Tribunal, además, resaltó su confianza en los jurados al reconocer que eran capaces de “separar el grano de la paja” al considerar evidencia admitida que a pesar de tener algún viso de sugestividad o de poca confia-bilidad, cumplía con los requisitos de Neil v. Biggers, supra.(6) Ello no implica que el Tribunal delegó la determi-nación sobre la admisibilidad en el juzgador de los hechos, sino que se puede admitir prueba sobre una identificación efectuada en un procedimiento sugestivo para que el juz-gador de los hechos adjudique el peso y la credibilidad que éste amerite. No podemos concluir otra cosa, pues es harto conocido que, en el ámbito del derecho procesal penal y *297 evidenciarlo, cualquier asunto de admisibilidad de prueba es un asunto de derecho solamente adjudicable por un juez en ausencia del jurado.
Nuestras expresiones en Pueblo v. Suárez Sánchez, supra; Pueblo v. Ortiz Pérez, supra, y en Pueblo v. Mattei Torres, supra, en cuanto a la deferencia debida a la conclu-sión del juzgador de los hechos sobre la suficiencia de la prueba de identificación, también tienen su origen en lo expresado en Mason v. Brathwaite, supra, por lo que no han mutado la naturaleza jurídica de la supresión de prueba de identificación solicitada y adjudicada, según la Regla 234 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, o la Regla 9(a) de Evidencia, 32 L.P.R.A. Ap. IV.
En esos casos, el tribunal había admitido la prueba que posteriormente fue presentada y aquilatada en el juicio. La impugnación de la identificación de los acusados en todos esos casos se presentó después de recaída la sentencia. Por eso, para revocar la apreciación del juzgador de los hechos en cuanto al peso o la credibilidad de esa prueba era nece-sario demostrar prejuicio, parcialidad o error manifiesto.(7) En cuanto a la admisibilidad de la prueba, etapa previa a la ponderada en estos casos, la posibilidad de revocación debe evaluarse a base de las circunstancias que dictan las Reglas 4, 5 y 6 de Evidencia, 32 L.P.R.A. Ap. IV, y su juris-prudencia interpretativa.(8)
*298 Con respecto a una solicitud para suprimir evidencia al amparo de la Regla 234 de Procedimiento Criminal, supra, en Pueblo v. Blase Vázquez, 148 D.P.R. 618, 633 (1999), expresamos:
Son precisamente los hechos particulares de cada caso los que permiten determinar si la actuación gubernamental es razonable .... Esto no significa que la adjudicación de una mo-ción de supresión de evidencia es de naturaleza fáctica. Por el contrario, en el pasado hemos expresado que la Regla 234 de Procedimiento Criminal se refiere a asuntos de derecho que hay que dirimir como paso previo a la admisibilidad de eviden-cia .... No obstante, en función de establecer si hay funda-mento en derecho que ordene la exclusión de la evidencia ob-jetada, el tribunal deberá aquilatar cuestiones de hecho. (Citas omitidas.)
De igual forma hemos dicho que cuando se presenta una moción de supresión de evidencia durante el transcurso del proceso judicial, se aplica la Regla 9 de Evidencia, supra, la cual
... se refiere a asuntos de derecho que hay que dirimir como paso previo a la admisibilidad de evidencia. A pesar que dicha determinación puede conllevar el aquilatamiento de algunas cuestiones de hecho, éstas serán dilucidadas preliminarmente por el juez en ausencia del Jurado. ...
De todo lo anterior se desprende con suma claridad que la determinación de conceder o denegar la admisión de evidencia es una función exclusiva del tribunal en la cual el Jurado no tiene presencia alguna. Es una determinación estrictamente de derecho. Pueblo v. Martínez Torres, 126 D.P.R. 561, 575 (1990).
Un acusado puede solicitar la supresión de prueba de una identificación fundamentándose en la su- *299 gestividad del proceso, en la falta de confiabilidad de la identificación o en ambos fundamentos. El juez del Tribunal de Primera Instancia determinará si se requiere cele-brar una vista evidenciaría y, posteriormente, si la identi-ficación lacera el debido proceso de ley del acusado por incumplir con ambos parámetros de admisibilidad (proceso no sugestivo e identificación confiable), ya sea según la Re-gla 234 de Procedimiento Criminal, supra, o la Regla 9(a) de Evidencia, supra. Una vez admitida, el juzgador de he-chos aquilatará la prueba y le otorgará el valor probatorio que entienda razonable. Para ello, el juzgador de hechos puede considerar los factores de sugestión y confiabilidad, aunque éstos se hayan argumentado en una moción de su-presión de evidencia, instada antes del juicio. Ahora bien, el asunto de admisibilidad de la prueba de identificación es un asunto de derecho revisable en su totalidad por los tribunales de apelación.(9)
IV

Constancia y expediente de los procedimientos

A. Acta
Cuando un acusado cuestiona la validez de un procedi-miento de identificación en un tribunal, el asunto de la constancia y el expediente de los procedimientos adquiere un mayor relieve, por las razones explicadas por el Tribu *300 nal Supremo estadounidense en United States v. Wade, supra, págs. 230-232:
... as is the case with secret interrogations, there is serious difficulty in depicting what transpires at lineups and other forms of identification confrontations ... the defense can seldom reconstruct the manner and mode of lineup identification forjudge or jury at trial ... [A]ny protestations by the suspect of the fairness of the lineup made at trial are likely to be in vain; the jury’s choice is between the accused unsupported version and that of the police officers present. In short, the accused’s inability effectively to reconstruct at trial any unfairness that occurred at the lineup may deprive him of his only opportunity meaningfully to attack the credibility of the witness’ courtroom identification.
Cuando emitimos nuestra opinión en el caso Pueblo v. Gómez Incera, supra, no había regulación estatutaria del procedimiento de identificación de sospechosos. Nos referi-mos entonces a varias fuentes que proveían ejemplos de reglamentación, entre éstas el Artículo 369 de la ley espa-ñola de enjuiciamiento criminal, según el cual “[e]n la dili-gencia que se extienda se harán constar todas las circuns-tancias del acto, así como los nombres de todos los que hubiesen formado la rueda o grupo”. Pueblo v. Gómez Incera, supra, pág. 255. Además, citamos las sugerencias del profesor Murray, quien propuso que un estatuto sobre la materia “ ‘debe requerir el uso de cámaras de movimiento y grabadoras para grabar el proceso de confrontación en aquellos estados que estén en condiciones económicas para proporcionar estos artefactos’ ”. Id., pág. 255.
El inciso (f) de la Regla 252.1, supra, establece la manera como se mantendrá la constancia y el expediente de los procedimientos:
Récord de los procedimientos. En todo procedimiento efec-tuado de acuerdo a estas reglas se levantará una breve acta la cual será preparada por el encargado de la rueda.
En dicha acta se incluirá el nombre de los integrantes de la *301 rueda, nombres de otras personas presentes y un resumen su-cinto de los procedimientos observados.
Deberá, además, tomarse cuantas veces fuere necesario para su claridad una fotografía de la rueda tal y como le fue presentada a los testigos. Dicha foto, al igual que el acta le-vantada, formará parte del expediente policiaco o fiscal corres-pondiente y su obtención por un acusado se regirá por las re-glas de procedimiento criminal vigentes.
En Pueblo v. Rivera Navarro, 113 D.P.R. 642, 651 (1982), dijimos que:
Aparte de aspirar a la uniformidad, la preparación de esa breve acta en todo procedimiento ... sería otra garantía más de que la Policía ha cumplido satisfactoriamente los requisitos germanos dirigidos a salvaguardar la confiabilidad en el pro-ceso de identificación penal. Sin embargo, su inobservancia no significa que automáticamente todo el proceso esta viciado. Lo crucial será la determinación judicial de si la identificación fue sugestiva. Claro está, al Ministerio Público se le dificultará demostrar la ausencia de sugestividad en aquellas situaciones en que la Policía prescinde, inexplicable e injustificadamente de algunos de los requisitos de la regla.
B. Foto de la rueda
El caso United States v. Wade, supra, págs. 231 y 233, explica que la sugestión intencionada, como la involunta-ria, puede manifestarse de maneras muy sutiles:
Los obstáculos a una identificación objetiva se hacen más patentes cuando la testigo identificante es la propia víctima. Las ruedas de identificación son utilizadas mayormente en ca-sos de violación o robo, en los que hay un riesgo particular de que el coraje de la víctima pueda incitar motivos vengativos o maliciosos .... Hay otras situaciones que pueden convertir una rueda de confrontación en innecesariamente sugestiva; por ejemplo, cuando los miembros de una rueda poseen rasgos fí-sicos sumamente disímiles; cuando el sospechoso es el único cuya apariencia o vestimenta concuerda con la descripción ofrecida por el testigo; cuando se le avisa al testigo que hay un sospechoso presente y se le señala cuál es o cuando se le pide a los participantes de una rueda que se prueben una pieza de ropa que sólo le sirve al sospechoso. (Traducción nuestra.)
*302 Como se puede observar, un procedimiento puede ser sugestivo, no sólo por el ánimo del testigo identificante o por el comportamiento de los funcionarios del orden público; la sugestividad también se puede dar por aspectos físicos de los integrantes de la rueda que señalen al acusado. Todas estas circunstancias deben perpetuarse para mayor claridad en los procedimientos.
En Pueblo v. Ortiz Pérez, supra, el apelante sostenía que se le había violado su derecho al debido proceso de ley, porque no se le tomó una foto de la rueda de identificación de forma absolutamente simultánea con su celebración. Al resolver que esa actuación fue conforme a derecho, nos pronunciamos sobre el propósito de la constancia de los procedimientos en la rueda de detenidos. Resolvimos que la frase “tal y como le fue presentada a los testigos” de la Regla 252.1(d)
... denota el propósito de dejar constancia fotográfica, entre otros extremos, del número de componentes de la rueda, su apariencia física en lo tocante a sexo, color, estatura, peso y vestimenta hasta donde sea posible .... En otras palabras, lo que la norma persigue es que queden plasmadas las condicio-nes de la composición de la rueda, elemento adicional a consi-derarse a la hora de estimar la confiabilidad de la identificación. (Énfasis suplido.) Pueblo v. Ortiz Pérez, supra, pág. 223.
El uso de esta foto es de gran importancia para la deter-minación judicial sobre la existencia de irregularidades que impliquen sugestividad o que minen la confiabilidad de la identificación. Ante una alegación de sugestividad ba-sada, por ejemplo, en la apariencia de los componentes de la rueda, o en el incumplimiento con la citada Regla 252.1(d)(1) se hace imperativa su reproducción en el tribunal. Véase Pueblo v. De Jesús Rivera, supra, pág. 822. Al respecto, Chiesa, op. cit., págs. 235-236, indica que
[e]ste inciso (f) tiene el evidente propósito de perpetuar de una manera confiable lo que ocurrió en el proceso de identifi- *303 cación ... lo que va a ser objeto de controversia ante el tribunal de instanciadonde se celebra el juicioy ante el tribunal apela-tivo ....
En Pueblo v. Rivera Navarro, [supra, pág. 651], el Tribunal Supremo rechazó así un planteamiento de que la Policía no levantara un acta negativa:
“Aparte del acta, el requisito de la fotografía de la rueda, tal como ésta fue presentada a los testigos, es sumamente impor-tante para que los tribunales puedan apreciar un plantea-miento de violación a la Regla (en cuanto a composición de la rueda) o de sugestividad impermisible.”
C. Rol del abogado en la rueda de identificación
Según el Tribunal Supremo federal en United States v. Wade, supra, págs. 223-225 y 235-236, los autores de la Carta de Derechos previeron el rol del abogado como uno más amplio que el de mero consejero en asuntos de puro derecho, consignándole responsabilidad por aquellos asun-tos de hecho que fueran inherentes a la defensa de los de-rechos de su cliente. El Tribunal advirtió que, a causa de la configuración moderna de la maquinaria estatal coercitiva, el acusado se expone a confrontaciones por parte del Mi-nisterio Público en procedimientos con antelación al juicio, cuyos resultados podrían predeterminar el destino de un acusado y convertir el juicio en una mera formalidad. Si bien este caso estableció que el derecho a la representación legal surgía cuando la rueda de detenidos se lleva a cabo luego haberse presentado una acusación contra una persona, allí se dijo que el derecho a la representación legal de un acusado de delito que participa en una rueda de identi-ficación debe garantizarse para proteger el derecho del acu-sado a un juicio justo, en el cual los testigos que le son adversos puedan ser efectivamente contrainterrogados y en el cual pueda presentar una defensa.
Es decir, el derecho a la representación legal en la etapa de identificación antes del juicio se ha forjado para garan-tizar una participación efectiva del abogado en el juicio al cual eventualmente será sometido un acusado. En fin, este derecho a que el abogado esté presente en la rueda forma *304 parte del derecho a un juicio justo e imparcial. El caso va más allá y advierte que aún el contrainterrogatorio no es garantía suficiente de confiabilidad y precisión en la evi-dencia de identificación que se desfile en el juicio. United States v. Wade, pág. 235.
La Regla 252.1, supra, establece, en su inciso (c), lo relativo a la reglamentación de la participación del abogado en la rueda de detenidos:
1. Se le permitirá al abogado del sospechoso presenciar el proceso completo de la rueda de detenidos.
2. Se le permitirá durante la celebración de la rueda de de-tenidos que escuche cualquier conversación entre los testigos y la Policía
3. No se le permitirá interrogar a ningún testigo durante al rueda de detenidos.
4. El abogado podrá indicar al oficial o funcionario encar-gado de la rueda de detenidos cualquier infracción a estas re-glas y si el primero entendiese que dicha infracción se está cometiendo, corregirá la misma. (Enfasis suplido.)
De la letra de la ley podemos colegir que la regla es permisiva y no mandataria y que no hay una exigencia estatutaria de presentar las objeciones al procedimiento durante éste. El profesor Chiesa, al comentar este inciso de la regla, califica como modesta la intervención del abogado durante la celebración de la rueda de detenidos y plantea este asunto como de estrategia legal que está a discreción del abogado y cuyo resultado puede afectar el peso o valor probatorio que el juzgador de hechos pueda adjudicarle a la impugnación de la prueba que la defensa haga en su momento. Chiesa, op. cit., págs. 228-289.
Según Resumil, la representación legal durante la rueda se ha reconocido como salvaguarda al derecho a la asistencia de abogado y al derecho a carearse con los testi-gos y la prueba adversa, cuando la rueda de detenidos se celebra después de presentase la acusación contra el sos-pechoso, en una etapa crítica del procesamiento. La “sen-sibilidad y conciencia que posee el abogado con respecto a *305 cualquier vicio en el procedimiento lo capacitan mejor que al sospechoso para reconstruir los hechos en el juicio posterior”. (Énfasis suplido.) O.E. Resumil de San Filippo, Derecho Procesal Penal, Bogotá, Ed. Equity, 1990, T. 1, pág. 335.(10)
V

La identificación por voz

En el contexto de una rueda de detenidos, pedirle a un sospechoso que emita alguna palabra, frase o sonido, que incluya aquello que alegadamente enunció el autor de un delito, no constituye evidencia de carácter testimonial protegida por la Quinta Enmienda de la Constitución estadounidense. United States v. Wade, supra, págs. 222-223; Gilbert v. California, supra, págs. 266-267. Según United States v. Dionisio, 410 U.S. 1 (1973), una prueba de voz tampoco constituye prueba objeto de un registro o allanamiento protegido por la Cuarta Enmienda de la Constitución de Estados Unidos.
La extensión a nuestra jurisdicción de esta norma esta-dounidense se hizo en el caso Pueblo v. Adorno Quiñones, 101 D.P.R. 429 (1973),(11) que trata sobre la identificación por voz y tacto que hace una víctima de violación que era ciega. El violador le había hablado durante la comisión de los hechos y ella reconoció su voz, como perteneciente a alguien a quien oía hablar con frecuencia, pues trabajaba cerca de su casa. Incluso, había escuchado a otras personas llamar por su nombre a la persona a quien pertenecía esa voz. La peijudicada también notó que el violador tenía ma-nos pequeñas. El acusado fue sometido a una rueda de con- *306 frontación que, en ese caso, calificamos de “prueba o expe-rimento” de comparación de voces, mediante el cual se le hicieron preguntas a él y a otros hombres de modo que al contestarlas se pudieran apreciar sus respectivos timbres de voz. La perjudicada identificó al acusado por su voz y por sus manos pequeñas.
En Pueblo v. Rodríguez Maysonet, supra, también tuvi-mos la oportunidad de evaluar una identificación de voz que hizo una víctima de delito. Al igual que en Pueblo v. Adorno Quiñones, supra, la víctima reconoció a su atacante espontáneamente y sin intervención previa del Estado, pues el atacante estuvo alrededor de cuarenta y cinco mi-nutos hablándole mientras la violaba.
En esos dos casos, al igual que en otros resueltos en nuestra jurisdicción, en los que se le pide al sospechoso o acusado que emita un sonido o una frase para propósitos de identificación, el requerimiento se ha hecho para asistir a testigos oculares o testigos que han brindado una des-cripción de otros rasgos físicos del perpetrador, tales como su altura o peso aproximados, su raza o si han tenido opor-tunidad previa de escuchar la voz del atacante. La situa-ción en el caso de autos es distinta. La identificación de voces fue efectuada por una persona que ha escuchado al autor del delito por teléfono en una sola ocasión, cuando se cometió el delito. La víctima no ofreció ninguna descripción de la voz o de algún rasgo físico de la persona a quien podría pertenecer la voz. Es por eso que la identificación efectuada requiere que nos pronunciemos sobre este proce-dimiento sui generis de rueda de identificación por voces. Para ello acudiremos a la jurisprudencia de jurisdicciones estadounidenses en las que se han llevado a cabo procedi-mientos de igual naturaleza.
En United States v. Schultz, 698 F.2d 365 (8vo Cir. 1983), el asaltante llamó por teléfono al oficial del banco para que colocara el dinero en un lugar específico. Los agentes del orden público grabaron la voz de Schultz y las *307 de cinco ex agentes del FBI. Los testigos escucharon las grabaciones separadamente y ambos identificaron a Schultz, cuya representación legal estuvo presente. A nin-guno de ellos se les dijo que la voz del acusado estaba entre las voces grabadas. Ante imputaciones de sugestividad por parte de la defensa, el tribunal evaluó la grabación para determinar si las voces de los agentes eran más refinadas que las del acusado y si había diferencia entre los acentos de los participantes de la rueda. El tribunal concluyó que había una marcada diferencia en el volumen de la graba-ción del acusado y el volumen de grabación de los agentes, convirtiendo el procedimiento en impermisiblemente sugestivo. Aún así, el tribunal concluyó que no hubo pro-babilidad razonable de identificación errónea tomando en consideración otras circunstancias y los criterios de Neil v. Biggers, supra.(12)
En el caso State v. Packard, 439 A.2d 983 (1981), el Tribunal Supremo de Connecticut expresó que estaba particu-larmente preocupado porque el procedimiento no fue gra-bado y las expresiones repetidas tampoco fueron escritas, de manera que se pudiera revisar el proceso. Aún así, el tribunal validó la evidencia obtenida, pues los testigos nunca vieron a los componentes de la rueda, un incidente que pudo haber señalado al acusado fue mitigado a tiempo y la testigo identificó al acusado inmediatamente.(13)
*308 En Com. v. Marini, 378 N.E.2d 51, 56 (1978), el Tribunal Supremo de Massachussets advirtió que, en todo caso cuando un testigo trate de parear el sonido de voces en vivo con el recuerdo de una voz que escuchó en una situación angustiosa, los agentes del orden público deben tomar las medidas estrictas para evitar condiciones sugestivas. El tribunal hizo una serie de recomendaciones que hoy repro-ducimos, pues nos pueden servir de guía en nuestro proceder. El tribunal sugirió: (1) evitar las ruedas de iden-tificación de voz y no celebrarlas, a menos que así lo re-quiera el testigo; (2) no llevarlas a cabo con tan sólo un integrante; (3) asegurar que el testigo no vea a los compo-nentes de la rueda en ningún momento. Para evitar que las emociones confundan el recuerdo del testigo, las palabras o los sonidos emitidos no deben ser los mismos que el autor del delito emitió y la rueda debe llevarse a cabo lo antes posible.(14)
Tomando en consideración estos y otros casos similares y según los principios generales de la Regla 252.1, supra, entendemos que una rueda de identificación de voces debe ser la excepción y celebrarse tan sólo en circunstancias extraordinarias en las que el testigo verdaderamente lo necesite o cuando no haya otro modo de identificación. Además, debe procurarse una descripción previa de la voz que escuchó el testigo, de manera que las voces que se escojan para la rueda tengan características similares. Deben participar en ésta al menos cinco perso- *309 ñas, incluyendo al acusado o sospechoso. Los testigos no pueden ver a los componentes de la rueda, y si hay más de un testigo, no pueden comunicarse entre ellos. También deben grabarse las voces de los componentes de la rueda para perpetuarlas, de manera que el tribunal revisor pueda considerar si hubo algún factor sugestivo. Incluso, debe evitarse el uso de las palabras o de los sonidos que fueron emitidos durante el crimen. Finalmente, en la me-dida de lo posible y si surge de los hechos delictivos, debe reproducirse en la rueda cualquier acción, o utilizarse cual-quier pieza de ropa o aparato que pueda alterar la voz de los participantes de manera que las voces se aproximen a la escuchada durante los hechos.

Celebración de la vista de supresión de prueba de identificación.

En United States v. Wade, supra, pág. 229, el Tribunal expresó que
... es un asunto de experiencia común que, una vez un testigo ha escogido al acusado en una rueda de identificación, es poco probable que se retracte posteriormente, por lo que en la prác-tica, el asunto de la identidad (en ausencia de otra prueba relevante) debe determinarse antes del juicio. (Traducción nuestra.)
En el caso Watkins v. Sowders, 449 U.S. 341 (1981), la prueba de identificación se argumentó en el juicio y fue objeto de contrainterrogatorio por parte de la defensa. En la apelación de la sentencia de convicción, el acusado argu-mentó que cuando se cuestiona la admisión de la evidencia de identificación, al igual que en el caso de la impugnación de la voluntariedad de una confesión, el tribunal estaba obligado por el debido proceso de ley a celebrar una vista evidenciaría en ausencia del Jurado. El Tribunal Supremo federal resolvió que, aunque el derecho al debido proceso de ley no requiere la celebración de una vista, muchas ve-ces es recomendable hacerlo e, incluso, en algunas circuns-tancias resulta constitucionalmente necesaria. A fin de *310 cuentas, la determinación de cuándo procede la vista evi-denciaría varía de caso a caso.(15)
De igual manera, en Pueblo v. Rey Marrero, supra, con-denamos que se espere al acto del juicio para presentar una moción de supresión de evidencia cuando la defensa tiene los fundamentos para sustentar su planteamiento de inadmisibilidad antes del juicio. Hicimos extensiva la Re-gla 234 de Procedimiento Criminal, supra, a las identifica-ciones de acusados, por razón de que “[l]a razón de la regla es tanto de economía de tiempo como de gastos”. Pueblo v. Rey Marrero, supra, pág. 750. En el contexto de registros y allanamientos hemos dicho que:
Esta disposición, conocida como norma de exclusión, persi-gue proveer: (1) un remedio a la víctima de registro y allana-miento irrazonables o ilegales; (2) evitar que el Gobierno se beneficie de sus propios actos ilegales; (3) preservar la integri-dad del tribunal, y (4) disuadir a los oficiales del orden público a que en el futuro no repitan las acciones objeto de impugnación. (Énfasis suplido.) Pueblo v. Blase Vázquez, supra, pág. 628.
Para establecer la inadmisibilidad de la identifi-cación es necesario que el imputado aporte prueba de los hechos que la harían inadmisible. Pueblo v. Rey Marrero, supra, pág. 751. Por eso, la Regla 234 de Procedimiento Criminal, supra, establece que en la moción que presente el acusado
... se deberán exponer los hechos precisos o las razones es-pecíficas que sostengan el fundamento o fundamentos en que *311 se basa la misma. El tribunal oirá prueba sobre cualquier cuestión de hecho necesaria para la resolución de la solicitud.
Ahora bien, no es obligatoria la celebración de una vista evidenciaría antes del juicio,
... salvo que la parte promovente demuestre que existe una controversia sustancial de hechos que la haga necesaria .... En ausencia de esa demostración, el tribunal puede adjudicar la moción a base de los escritos presentados por las partes, sin celebrar vista evidenciaría. (Enfasis suprimido.) Pueblo v. Blase Vázquez, supra, págs. 629-630. Véase Pueblo v. Maldonado, Rosa, 135 D.P.R. 563, 569 (1994).
Hemos adoptado esta norma, no tan sólo por razones de economía procesal y de administración de la justicia, sino
... por razón de tener el efecto de que el tribunal pueda dispo-ner, con mayor rapidez, de mociones de supresión que son frí-volas e infundadas. En segundo término, dicha norma no sólo ilustra de forma óptima al tribunal sobre la controversia que éste tiene que dilucidar sino que pone en condiciones al Minis-terio Público de poder refutar, correcta y sucintamente, las alegaciones de la defensa. (Énfasis suplido.) Pueblo v. Blase Vázquez, supra, pág. 630, citando a Pueblo v. Maldonado, Rosa, supra, pág. 569.
VI
Examinemos ahora, en el marco de la normativa reseñada, lo sucedido en el caso sometido a nuestra consideración. Hemos visto que la presencia del abogado durante la rueda de detenidos, si bien provee unas salvaguardas mínimas, no puede validar lo que, de por sí, es ultra vires. Por lo que su presencia sin objetar el procedimiento no incide sobre la admisibilidad de la prueba de identificación. La presencia del abogado se ha permitido con miras a salvaguardar el derecho a un juicio justo e imparcial y el derecho a enfrentar la prueba adversa. La ejecutoria del abogado durante la rueda será aquilatada *312 como un factor más que se ha de considerar al dirimir el asunto de admisibilidad. Una vez admitida la prueba, la participación del abogado en la etapa de identificación extrajudicial pasará a la consideración del juzgador de he-chos como un asunto que puede afectar el peso probatorio de la prueba de identificación.
Igual trato le damos al que la defensa suscriba el acta. Este hecho, de por sí, no convierte la prueba de identificación en admisible. Una conclusión de admisibilidad en un caso como el de autos requiere una evaluación cuidadosa de los aspectos que la jurisprudencia ha señalado como medulares para establecer la validez de la rueda de detenidos.
La rueda de identificación de voces efectuada en el caso de autos se hizo con cinco miembros, incluyendo al peticionario. La señora Ortiz, quien identificó al peticiona-rio, no vio en ningún momento a los componentes de la rueda mientras hablaban. Las frases que emitieron fueron algunas de las que alegadamente se expresaron durante la comisión de los hechos delictivos y éstas se trasmitieron por la vía telefónica, por ser éste el medio por el cual la señora Ortiz oyó la voz del perpetrador. No tenemos obje-ción alguna en torno al método utilizado, pues es compatible con las guías que hemos establecido en esta opinión.
Lo mismo no es cierto, en cuanto a la falta de grabación de la rueda de voces. En los casos que hemos revisado sobre rueda de identificación de voces, los tribunales revisores evalúan el aspecto de sugestividad con la grabación de los procedimientos. En este contexto, un acta, sin más, no puede reproducir lo acontecido durante la rueda. Por consiguiente, resolvemos que la falta de grabación incide sobre el derecho del acusado a impugnar la identificación por sugestiva o poco confiable. No hay otra forma como los tribunales puedan evaluar el elemento de similaridad cuando la rueda de identificación consiste de *313 voces. Véase Pueblo v. De Jesús Rivera, supra, pág. 823.(16) Nuestra determinación, por razones obvias, será de aplica-ción prospectiva.
Si bien el acusado sólo reclamó en su moción de supre-sión de evidencia que no se había cumplido cabalmente con las disposiciones de la Regla 252.1, supra, durante la vista argumentativa celebrada abundó en sus planteamientos sobre la novedad de la controversia, la falta de reglamen-tación del procedimiento de identificación de voces y la ne-cesidad de que se dilucidaran los aspectos de confiabilidad y sugestividad en una vista evidenciaría en donde se le brindara la oportunidad a la defensa de desfilar prueba. Su petición no carece de fundamento, ni mucho menos pre-senta el problema de frivolidad que queremos desalentar en el contexto de solicitudes para celebrar vistas de supre-sión de evidencia.
Al no haber una grabación del procedimiento llevado a cabo en este caso, y dada la imposibilidad de cumplir con ese requisito que estamos estableciendo prospectivamente, la celebración de la vista evidenciaría solicitada es impera-tiva para recibir y aquilatar prueba testifical y documental sobre el procedimiento impugnado.(17) El tribunal no puede considerar los requisitos de admisibilidad de la prueba de identificación sin aquilatar esa evidencia.
Ahora bien, aclaramos que nuestra conclusión no pre-juzga de forma alguna la controversia sobre la admisibili-dad de la identificación por voz realizada en este caso ni invalida el proceso llevado a cabo. Corresponde al foro de instancia, según los criterios enunciados en esta opinión, dilucidar si esa identificación por voz fue innecesariamente *314 sugestiva y, aun de serlo, si posee suficientes indicios de confiabilidad. Del mismo modo, aclaramos que lo aquí re-suelto no altera, sino que es una aplicación de los criterios estatutarios tradicionales de la identificación de sospecho-sos a los procedimientos particulares de identificación por voz, como el que se llevó a cabo en el caso ante nuestra consideración.
Por los fundamentos expuestos, revocamos la sentencia del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para que celebre una vista evi-denciaría según lo aquí resuelto.

Se dictará sentencia de conformidad.

 Según alega el peticionario, no se le ha entregado el acta, a pesar de mediar una petición al amparo de la Regla 95 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.

 El peticionario argumenta que la participación de su abogado se limitó a observar a la señora Ortiz mientras escuchaba voces a través de un teléfono, pues no vio a los componentes de la rueda ni participó en su selección.

 Aclaramos que este Tribunal no está obligado por la jurisprudencia interpre-tativa de la Constitución federal y sólo hacemos referencia a unos derechos consti-tucionales mínimos. La jurisprudencia federal no es la base de la decisión a la cual llegamos hoy, sino la Constitución y las leyes del Estado Libre Asociado y nuestra jurisprudencia.

 Acogimos este planteamiento en Pueblo v. Gómez Incera, 97 D.P.R. 249 (1969).

 En Pagán Hernández v. Alcaide, 102 D.P.R. 101, 104 (1974), opinión revocada en reconsideración por otros fundamentos, se hace el mismo planteamiento:
“La identificación de un acusado, si no es confiable, no es admisible en eviden-cia, cuestión a ser determinada por el tribunal como cuestión de derecho ya que envuelve una violación al debido proceso de ley.” (Énfasis suplido.)

 En palabras del Tribunal Supremo estadounidense:
“We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.” (Enfasis suplido.) Mason v. Brathwaite, 432 U.S. 98, 116 (1997).

 Véanse: Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986); Pueblo v. Cruz Negron, 104 D.P.R. 881, 883 (1976).

 Es importante señalar que posterior a Pueblo v. Suárez Sánchez, 103 D.P.R. 10 (1974), en Pueblo v. Toledo Barbosa, 105 D.P.R. 290, 293-294 (1976), resuelto mediante sentencia, la mitad de los componentes de este Tribunal avaló una opinión de conformidad en la que se explicó lo siguiente:
“La determinación en cuanto a si la prueba de identificación es prima facie suficiente y admisible en evidencia, es función del juez y no del jurado. Pagán Her-nández v. Alcaide, 102 D.P.R. 101, 103 (1974). La moción para que no se admita en evidencia la identificación del acusado debe hacerse antes del juicio, a menos que concurran circunstancias excepcionales que justifiquen la tardanza. Si el juez queda satisfecho de la suficiencia y confiabilidad prima facie de la identificación establecida en la determinación de causa probable y mediante examen de las demás constancias en el expediente, y si necesario fuere, en el sumario fiscal, desestimará de plano la *298 cuestión suscitada por la defensa, admitirá la prueba y procederá al juicio. Queda reservado al acusado el derecho a presentar prueba ante el jurado, en el turno de defensa, para sostener que hubo equivocación o error substancial en la identificación y esa evidencia será tomada en cuenta, junto con el resto de la prueba producida en el juicio, para hacer la determinación fundamental en cuanto a si fue o no el acusado el autor del delito imputado en la acusación.” (Enfasis suplido.)

 En Pueblo v. Mejías, 160 D.P.R. 86, 93 (2003), se apeló una resolución del Tribunal de Primera Instancia que admitió una prueba de identificación luego de celebrada una vista de supresión de evidencia. En ese caso, al referirnos a la deter-minación del Tribunal de Primera Instancia sobre la admisibilidad de la prueba de identificación y citando a Pueblo v. Ortiz Pérez, supra, págs. 223-224, dijimos que “ la conclusión del juzgador de hechos sobre la confiabilidad de la prueba tiene todo el respeto y validez que ordinariamente se le extiende a las determinaciones de hecho’ ”. Por las razones que hemos expuesto, revocamos lo que, en esa ocasión, resolvimos sobre la naturaleza jurídica de la determinación de admisibilidad de la evidencia de identificación que resulte incompatible con lo aquí establecido. Véase el voto disidente del Juez Asociado Señor Irizarry Yunqué en Pueblo v. Lebrón Bones, 110 D.P.R. 780 (1981).

 Aunque en el caso de autos la rueda se celebró antes que la presentación de la acusación contra el peticionario, la doctrina citada nos es de gran ayuda en el análisis general sobre el rol del abogado en una rueda de detenidos. La autora cita los casos United States v. Wade, supra, y United States v. Ash, 413 U.S. 300 (1973).

 Véase, además, Pueblo v. Aspurúa, 61 D.P.R. 252, 255-256 (1943).

 Véase White v. State, 773 P.2d 211, 215 (1989), donde citando a United States v. Schultz, 698 F.2d 365 (8vo Cir. 1983), se dice que el eje de la evaluación de una identificación de voces debe ser la similaridad en las cualidades vocales, tales como el tono y el acento de las voces de los componentes de la rueda.

 Véanse, además: United States v. Dupree, 553 F.2d 1189 (8vo Cir. 1977); Harris v. State, 373 N.E.2d 149 (1978); State v. Dixon, 969 S.W.2d 252 (1998) y People v. Holden, 703 P.2d 603 (Colo. 1985), donde la rueda de voces fue grabada; People v. Vallez, 80 Cal.App.3d 46 (1978), donde el tribunal evaluó la grabación de las seis voces utilizadas en una rueda de identificación de voces para determinar si todas las voces demostraban un acento mexicano como el del acusado; State v. Ledger, 499 N.W.2d 198 (1993), en el que el tribunal usó una grabación de la rueda de identifi-cación por voces para evaluar el acento, la gama de sonido y el volumen de los participantes de la rueda; People v. Molina, 116 Cal.App.3d 223 (1981), y Williams v. State, 295 S.E. 2d 361 (1982), donde el tribunal evaluó, como parte del análisis de admisibilidad, las grabaciones que el testigo escuchó para identificar al autor del delito.

 Véase, también, Com. v. Miles, 648 N.E.2d 719 (1995), donde el tribunal evaluó una grabación en videocinta (VHS) de la rueda de voces para evaluar una impugnación por sugestividad dada una diferencia alegada en las voces. En State v. Gallagher, 668 A.2d 55 (1995), se dijo que el testigo debe tener una base adecuada para comparar la voz que recuerda con la voz identificada. Aquí, se siguió un proceso similar al de United States v. Schultz, supra. Se grabaron seis voces, incluso la del acusado, para que el testigo identificara al autor del delito y el tribunal de instancia evaluó la grabación para determinar si hubo sugestividad. En New Jersey v. Gallagher, supra, pág. 64, y en Commonwealth v. Turner, 352 A.2d 68 (1975), se expresó que la evidencia fruto de una identificación de voces requiere una evaluación cuidadosa, especialmente cuando es la única evidencia de identificación del Estado. Véase, ade-más, Commonwealth v. Derembeis, 182 A. 85 (1935).

 Véanse: United States v. Mitchell, 540 F.2d 1163 (3er Cir. 1976); United States v. Cranson, 453 F.2d 123 (4to Cir. 1971); Haskins v. United States, 433 F.2d 836 (10mo Cir. 1970); United States v. Ranciglio, 429 F.2d 228 (8vo Cir. 1970); United States v. Allison, 414 F.2d 407 (9no Cir. 1969); United States v. A. Broadhead, 413 F.2d 1351 (7mo. Cir. 1969); Clemons v. United States, 408 F.2d 1230 (DC. Cir. 1968); Nassar v. Vinzant, 519 F.2d 798 (1er Cir. 1975); United States ex rel. Phipps v. Follette, 428 F.2d 912 (2do Cir. 1970), United States ex rel. Fisher v. Driber, 546 F.2d 18 (3er Cir. 1976).

 Chiesa, op. cit., págs. 229-230, considera que la regla establece como man-datoria la similaridad en cuanto a sexo, color y raza, y como directiva la similaridad en estatura, edad, peso y vestimenta. El autor aclara que, en el contexto de identi-ficación por voces, lo importante es la similaridad de éstas.

 En Commonwealth v. Turner, 352 A.2d 68 (1975), en una vista evidenciaría, el tribunal escuchó a los componentes de la rueda de identificación por voces para determinar si hubo sugestividad.